# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| JANE SIRES,<br><br>    Plaintiff,<br><br>vs.<br><br>VAN METER INDUSTRIAL, INC.,<br><br>    Defendant. | No. C04-0095<br><br>**ORDER** |

This matter comes before the court pursuant to Defendant Van Meter Industrial, Inc.'s May 26, 2005 motion for certificate of appealability/motion to amend orders of January 26, 2005 and April 12, 2005 to certify interlocutory appeal to the Eighth Circuit Court of Appeals pursuant to 28 U.S.C. § 1292 (docket number 22). For the reasons set forth below, the defendant's motion is denied.

## I. PROCEDURAL BACKGROUND

The plaintiff, Jane Sires, filed an employment discrimination Complaint with the Mason City Human Rights Commission (MCHRC) on May 21, 1998, alleging a violation of Mason City Ordinance Chapter 10, which prohibits employment discrimination based on sex. On the same day, the plaintiff cross-filed her Complaint with the Equal Employment Opportunity Commission, alleging sex discrimination as prohibited by Title VII of the Civil Rights Act. A public hearing on the plaintiff's MCHRC Complaint was held on May 17, 2000, before Administrative Law Judge (ALJ) Ione G. Shadduck. On October 4, 2000, ALJ Shadduck issued a proposed decision and order, finding that the plaintiff had established a prima facie case of sex discrimination, and that the defendant's proffered legitimate non-discriminatory reasons for its actions were pretextual. ALJ Shadduck further found that the plaintiff had been constructively discharged from her

1

position. ALJ Shadduck proposed that damages be awarded to the plaintiff for back pay in the amount of $43,959.77, front pay in the amount of $9,202.00, emotional distress in the amount of $7,500.00, administrative costs for the hearing, and attorney's fees. ALJ Shadduck also proposed that the defendant be ordered to "cease and desist from any further practices of sex discrimination," establish a "written policy for supervisory/management personnel transfers, promotions, demotions, wage increases/decreases and reporting procedures," and "develop job descriptions for each job for which it hires employees."

On December 15, 2000, the MCHRC issued a final ruling and order adopting in full ALJ Shadduck's proposed order. The MCHRC denied the appeals of both the plaintiff and the defendant to ALJ Shadduck's proposed order. The defendant then filed a petition for judicial review of the MCHRC's ruling, arguing that the MCHRC erred in finding that the defendant had engaged in sex discrimination when it failed to promote the plaintiff to the local leader position, and that the plaintiff had been constructively discharged. The plaintiff filed a cross-petition for judicial review of the MCHRC's damages award, arguing that (1) her back pay award should have been calculated on the salary she would have received had she not been discriminated against; (2) her front pay award was computed for an insufficient amount of time "given the egregious facts in this case"; (3) her award for emotional distress damages should be increased; and (4) because she cross-filed her complaint with the Equal Employment Opportunity Commission (EEOC), punitive damages should be awarded even though they were not available under Iowa law.

The Linn County District Court concluded that there was substantial evidence in the record to show that the plaintiff had established employment discrimination based on sex. The court went on to find, however, that substantial evidence did "not show that [the plaintiff] was subjected to intolerable working conditions which is required in order to assert a claim of constructive discharge." Accordingly, the court ordered that the MCHRC's decision be reversed as to the plaintiff's claim of constructive discharge. In

reviewing the plaintiff's cross-petition in regard to punitive damages, the court noted that although the plaintiff "recognizes that punitive damages are not available under Iowa discrimination law and none were awarded here. . . . [the plaintiff] cross-filed her complaint with the EEOC and contends punitives should now be available here." The court concluded that "[a]fter a review of the record, the Court finds no reason to change the damages award [of the MCHRC] which is supported by substantial evidence."

The defendant appealed the Linn County District Court's order to the Iowa Court of Appeals, arguing that (1) the district court erred in failing to reduce the award of back pay and front pay "in light of its conclusion [that the plaintiff] was not constructively discharged"; (2) there was not substantial evidence to support the award of emotional distress damages; and (3) "the [MCHRC's] remedial order is contrary to the law and not supported by substantial evidence." The plaintiff cross-appealed, contending (1) the district court erred in finding that she was not constructively discharged; and (2) the damage award was insufficient. By Order dated April 4, 2003, the Iowa Court of Appeals ruled that the Linn County District Court "properly reversed the [MCHRC's] finding that [the plaintiff] had been constructively discharged," because "[t]he loss of a single promotional opportunity alone is not sufficient to create intolerable working conditions." On the issue of damages, the court re-calculated the plaintiff's award by measuring her front and back pay damages as the difference between the amount that she would have made had she stayed in her position as operations manager and the amount that she would have made had she not been discriminated against and had received the local leader position. Accordingly, the court increased the plaintiff's damage award for front and back pay from $43,959.77, as calculated by the MCHRC and affirmed by the Linn County District Court, to $48,138.20. The court affirmed the MCHRC's emotional distress award. In regard to the remedial relief ordered by the MCHRC, the court found that "[b]ecause the evidence indicates sex discrimination reaches beyond the Mason City Branch [of the defendant], the [MCHRC] was within its power to order company-wide

remedial relief." The court also affirmed the Linn County District Court's refusal to award punitive damages, noting that the plaintiff had cited "no authority supporting her proposition that cross-filing her complaint with the EEOC grants the [MCHRC] the authority to award her punitive damages and we find none."

The defendant next appealed to the Iowa Supreme Court, arguing that the Iowa Court of Appeals erroneously increased the front pay and back pay awards because "such damages are not recoverable where the employee has voluntarily resigned." The plaintiff cross-appealed, arguing that (1) the Linn County District Court and Iowa Court of Appeals erred in concluding that there was not substantial evidence to support the MCHRC's finding of constructive discharge; and (2) the Linn County District Court and Iowa Court of Appeals erred in ruling that the MCHRC could not award punitive damages. The Iowa Supreme Court reversed the Linn County District Court's ruling that there was not substantial evidence in the record to prove that the plaintiff was constructively discharged. Specifically, the Iowa Supreme Court found that there was "substantial evidence that a reasonable person in [the plaintiff's] position would have concluded there was no opportunity for fair treatment and the resulting work environment was so difficult or unpleasant that she had no choice but to resign." Based on the court's finding that there was substantial evidence in the record to support the MCHRC's finding that the plaintiff had been constructively discharged, the court denied as moot the defendant's argument that the plaintiff had not been entitled to front pay and back pay because she voluntarily quit. In regard to the plaintiff's front and back pay awards, the court found that the plaintiff's "earning loss" should be "measured by the difference between her actual earnings and $52,000.00, the sum earned by [the person hired] in the position [of regional manager] discriminatorily denied to [the plaintiff]." Accordingly, the court found that the plaintiff's damage award should be increased to $94,104.00 for back pay and $21,638.00 for front pay. In regard to the plaintiff's claim for punitive damages, the court noted that the plaintiff complained about the MCHRC's failure to award punitive damages, while

4

conceding "that punitive damages are not available under the Iowa Civil Rights Act." The court found that the MCHRC correctly determined that it had no power to award punitive damages as it acted solely within its limited power to "determine complaints alleging an unfair or discriminatory practice under the Iowa Code" and the Iowa Civil Rights Act, neither of which allow for an award of punitive damages.

The plaintiff then filed a Complaint in the United States District Court for the Northern District of Iowa for supplemental relief in the form of punitive damages. The plaintiff filed a motion for summary judgment on October 19, 2004, asserting that her claim for punitive damages should be granted as a matter of law. The defendant resisted, arguing that the plaintiff's claim for punitive damages was precluded by res judicata. The court entered an order on January 26, 2005, granting the plaintiff's motion for summary judgment in regard to the court's ability to award punitive damages in this case pursuant to Title VII, and denied the plaintiff's motion for summary judgment as to whether punitive damages should be awarded as a matter of law.

The defendant then filed a motion for summary judgment on March 31, 2005, arguing that the plaintiff's claim for punitive damages failed as a matter of law because the conduct of the defendant was not sufficiently egregious to establish that punitive damages were warranted. By order dated April 12, 2005, the court denied the defendant's motion for summary judgment, finding that there were genuine issues of material fact appropriate for trial in regard to whether the defendant intentionally discriminated against the plaintiff with malice or reckless disregard of her federally protected rights. The defendant then filed the instant motion on May 26, 2005, requesting that this court certify for appealability two issues in this case.

## II. CONCLUSIONS OF LAW

28 U.S.C. § 1292 provides, in pertinent part:

> When a district judge, in making a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to

5

> which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing such order.

28 U.S.C. § 1292(b).

"It has, of course, long been the policy of the courts to discourage piece-meal appeals because most often such appeals result in additional burdens on both the court and the litigants. Permission to allow interlocutory appeals should thus be granted sparingly and with discrimination." White v. Nix, 43 F.3d 374 (8th Cir. 1994). See also Control Data Corp. v. International Business Machs. Corp., 421 F.2d 323, 325 (8th Cir. 1970). Motions for certification are to be granted sparingly, and the movant bears a heavy burden in demonstrating that the case is an exceptional one in which immediate appeal is warranted. Id. (citing Bank of New York v. Hoyt, 108 F.R.D. 184, 189 (D.R.I. 1985)).

### A. The Court's January 26, 2005 Order

The defendant first contends that the court's January 26, 2005 order granting in part and denying in part the plaintiff's motion for summary judgment reflects a "difference of opinion between this [c]ourt and the Eighth Circuit Court of Appeals" regarding a controlling question of law, specifically "the preclusive effect of a state-law judgment on a subsequent Title VII claim." The defendant argues that "[w]hereas this [c]ourt determined that [the plaintiff's] Title VII [punitive damages] claim is not barred by her previous state-law judgment, the Eighth Circuit has held to the contrary." In support of the proposition that this court's January 26, 2005 order is in conflict with Eighth Circuit holdings, the defendant cites to the cases of Sondel v. Northwest Airlines, Inc., 53 F.3d 934, 937-41 (8th Cir. 1995); Butler v. City of North Little Rock, 980 F.2d 501 (8th Cir. 1992); and Hickman v. Electronic Keyboarding, Inc., 741 F.2d 230 (8th Cir. 1984). The

6

defendant further contends that the court misconstrued the "narrow" holding of <u>Carey v. New York Gas Light</u>, 448 U.S. 54 (1980) in its January 26, 2005 order.[1]

The plaintiff resists, arguing that this issue fails to meet the requirements for certification of appealabilty under 28 U.S.C. § 1292, in regard to whether it presents a controlling question of law as to which there is substantial ground for difference of opinion. In support of the contention that this issue is inappropriate for interlocutory appeal, the plaintiff argues that (1) the <u>Carey</u> case "did not involve a 'narrow issue' as alleged by the [d]efendant" and the defendant's proffered construction of <u>Carey</u> "is contradicted by the very language of the <u>Carey</u> case"; (2) none of the cases cited by the defendant concerned an issue that had been decided by the United States Supreme Court as in this case;[2] (3) the Eighth Circuit cases cited by the defendant regarding claim preclusion are not controlling because each case involved complaining parties who were unsuccessful at the state level and then attempted to re-litigate their cases in federal court, and none of the cases address the holding of <u>Carey</u> as it concerns the issue of supplemental relief under Title VII; and (4) the only case found by the plaintiff concerning the Eighth Circuit Court of Appeals' interpretation of <u>Carey</u> indicated that the holding of <u>Carey</u> is not as narrow as urged by the defendant.

The court finds that this issue, specifically whether the plaintiff may pursue a claim for punitive damages in federal court after succeeding on the merits of her employment discrimination claim in state court, does not present a controlling question of law as to

---

[1] In a footnote, the defendant asserts that "<u>Carey</u> addresses the narrow issue of 'whether, under Title VII of the Civil Rights Act of 1964, a federal court may allow the prevailing party attorney's fees for legal services performed in prosecuting an employment discrimination claim in state administrative and judicial proceedings that Title VII requires federal claimants to invoke.'"

[2] The plaintiff cites to <u>Carey</u> as holding that "successful [p]laintiffs in state court proceedings are entitled to supplemental relief in federal court to the extent that relief available under Title VII was not available under state law."

which there is substantial ground for difference of opinion. The issue cannot be said to present a controlling question of law, as it has previously been decided by the United States Supreme Court and interpreted by the Eighth Circuit Court of Appeals. It further cannot be said that this issue is one for which there is a substantial ground for difference of opinion. While it is true that the precise issue may be one of first impression, specifically whether an employment discrimination litigant who is successful in state court at proving the merits of their discrimination claim may seek supplemental relief in the form of punitive damages in federal court pursuant to Title VII and the Supreme Court's decision in Carey, the issue does not present a controlling question of law based on both the holding and reasoning of Carey and the Eighth Circuit Court of Appeals' reading of Carey in Jones v. American State Bank, 857 F.2d 494 (8th Cir. 1988).

In Jones, the Eighth Circuit Court of Appeals indicated that the holding of Carey was not to be read narrowly. The plaintiff, in Jones, filed for attorney's fees and costs in federal court following successful prosecution of her civil rights claim before a state agency. The defendant argued that the plaintiff "should not be permitted to sue in federal court merely for attorney's fees" and asked the Eighth Circuit to interpret Carey as leaving that question open. In determining that Carey mandated that the plaintiff in Jones be entitled to bring her claim in federal court for attorney's fees and costs unavailable to her in the state forum, the Eighth Circuit noted:

> Title VII merely provides a supplemental right to sue in federal court if satisfactory relief is not obtained in state forums. § 706(f)(1). ONE ASPECT OF COMPLETE RELIEF IS AN AWARD OF ATTORNEY'S FEES, WHICH CONGRESS CONSIDERED NECESSARY FOR THE FULFILLMENT OF FEDERAL GOALS.

Jones, 857 F.2d at 498 (citing Carey, 447 U.S. at 66) (emphasis in original). The court further noted that while the Jones case differed from Carey in that the plaintiff in Jones did not seek to relitigate the merits in federal court, "nevertheless, all of the policy arguments

8

in <u>Carey</u> and the themes which pervade Title VII interpretation command the same conclusion [as the conclusion in <u>Carey</u>]." The court in <u>Jones</u> went on to state:

> The [state] agency awarded her the maximum relief possible under state law, declining to consider her request for attorney's fees only because they were unavailable under state law. We find no indication that Congress intended Title VII, by its system of state deferral, to leave the execution of Title VII's goals exclusively to the judgment of state officials. Rather, as the Court in <u>Carey</u> reasoned, federal courts are to operate as residual guarantors of Title VII rights. This policy is so strong that the Court in <u>Carey</u> nearly anticipated these facts in giving an example of the reach of its reasoning.

The <u>Jones</u> court further went on to quote from the <u>Carey</u> opinion as follows:

> For example, if state proceedings result in an injunction in favor of the complainant, but no award for backpay because state law does not authorize it, the complainant may proceed in federal court to 'supplement' the state remedy. The state law which fails to authorize backpay has not been pre-empted.

<u>Jones</u>, 857 F.2d at 498 (quoting <u>Carey</u>, 447 U.S. at 68). The <u>Jones</u> court decided that based upon the holding and reasoning of <u>Carey</u>, and because the plaintiff was "not afforded complete relief by the state Agency," as "attorney's fees awards are essential to the aims of Title VII," the plaintiff was entitled to pursue her claim for attorney's fees in federal court.

The court finds that both <u>Carey</u> and <u>Jones</u> are controlling on the issue presented in this case, while the three cases cited by the defendant do not specifically address the issue presented in this case. Specifically, in support of its proposition that the plaintiff's claim for punitive damages is pre-empted by her state-law judgment, the defendant cites to <u>Sondel v. Northwest Airlines, Inc.</u>, 56 F.3d 934, 937-41 (8th Cir. 1995); <u>Butler v. City of North Little Rock</u>, 980 F.2d 501 (8th Cir. 1992); and <u>Hickman v. Electronic Keyboarding, Inc.</u>, 741 F.2d 230 (8th Cir. 1984). In <u>Sondel</u>, the plaintiff filed a class action law suit in federal district court alleging discrimination by Northwest Airlines based on their minimum height requirement. The plaintiff also subsequently filed suit in state

court, and was ultimately unsuccessful on the merits of her claim in state court. Following the adverse decision in state court, the defendant moved for summary judgment in federal court, claiming that the plaintiff's claim was barred by res judicata and collateral estoppel. The Eighth Circuit Court of Appeals affirmed the district court's holding that the plaintiff's claim was barred by claim preclusion. Sondel, 56 F.3d at 937-41.

In Butler, the plaintiff filed a Complaint with the North Little Rock Civil Service Commission alleging that his termination of employment was motivated by race discrimination. The Commission upheld the defendants' decision to terminate the plaintiff's employment. The plaintiff sought review of the Commission's decision in state circuit court, and also filed suit in federal court based on the same cause of action. The state circuit court upheld the Commission's decision. The defendants then filed a motion for summary judgment in federal court on the theory of res judicata and preclusion. The district court granted the defendants' motion for summary judgment, and the Eighth Circuit Court of Appeals upheld the district court's order, finding that the plaintiff was precluded from bringing his claim in federal court based on the state court action. Butler, 980 F.2d at 504.

In Hickman, the plaintiff filed a charge of race discrimination with the Missouri Commission on Human Rights, alleging that he was discriminated against in wages and in the denial of a promotion. The hearing officer found in favor of the plaintiff and the defendant appealed to the Circuit Court of Cole County, Missouri. The circuit court overturned the MCHR's decision, and the MCHR then appealed to the Court of Appeals of Missouri, only to subsequently withdraw that appeal. The plaintiff then received a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC) and filed suit in federal court based on the same cause of action. The defendant filed for summary judgment in federal court claiming that the plaintiff's claim was barred by res judicata, and the plaintiff argued that he was not barred because the requirement of identity of the persons and parties to the action was lacking. The Eighth Circuit Court of Appeals held

that the relationship between the plaintiff and the MCHR was sufficiently close to establish "privity," and that res judicata barred the plaintiff's suit in federal court. Hickman, 741 F.2d at 233.

Significantly, none of the three cases cited by the defendant address the question of what supplemental relief, pursuant to Title VII, may be obtained in federal court for a litigant who is successful on their Title VII claim in a state forum but is unable to obtain certain remedies provided under Title VII, such as attorney's fees, back-pay, or punitive damages, because those remedies are unavailable to the litigant in the state forum. Rather, the only Eighth Circuit case interpreting reach of Carey, and addressing the issue of supplemental relief in federal court, is the Jones case as discussed above. Accordingly, the court finds that this issue does not meet the requirements for certification for interlocutory appeal under 28 U.S.C. § 1292.

## B. The Court's May 26, 2005 Order

The defendant further argues that the court's May 26, 2005 order denying its motion for summary judgment reflects a difference of opinion with Eighth Circuit case law on a controlling question, specifically whether the plaintiff's claim for punitive damages fails as a matter of law. The defendant asserts that the issue represents a controlling question because it is the plaintiff's sole claim in this case. The defendant further asserts that the court's order in this regard reflects a difference of opinion with Eighth Circuit precedent because "even if [the plaintiff's] allegations are taken as true, [the defendant's] alleged conduct-'failing' to appoint [the plaintiff] to a position which she had never expressed any interest- is far less egregious tha[n] discriminatory conduct deemed by the Eighth Circuit to not support a punitive award as a matter of law." In support of its contention that the plaintiff's punitive damages claim fails as a matter of law, the defendant cites to the cases of Lawrence v. CNF Transport., Inc., 340 F.3d 486 (8th Cir. 2003); Dhyne v. Meiners Thriftway, Inc., 184 F.3d 983 (8th Cir. 1999); Browning v. President Riverboat Casino-Missouri, 139 F.3d 631 (8th Cir. 1998); and Deenen v. Northwest Airlines, Inc., 132 F.3d

11

431, 439 (8th Cir. 1998). The plaintiff resists, arguing that the defendant "has not shown that the [court's April 12, 2005 order] involves a 'controlling question of law,' or that there is a 'difference of opinion,' between this [c]ourt and the Eighth Circuit on the level of proof required to recover punitive damages under Title VII."

The court finds that the issue of whether the plaintiff's claim for punitive damages fails as a matter of law is not a controlling question of law on which there is substantial ground for difference of opinion. First, the defendant's contention that the only conduct by the defendant in question concerning whether the defendant intentionally discriminated against the plaintiff with malice or reckless disregard of her rights was "failing to appoint [the plaintiff] to a position in which she had never expressed any interest," is not a fair depiction of the findings of record made by the MCHRC and the Iowa courts. Specifically, the MCHRC, the district court, the Iowa Court of Appeals, and the Iowa Supreme Court made many other findings which included,[3] (1) despite announcing at a meeting that a new local leader position was being formed and that anyone interested should contact him to apply, the defendant's regional general manager, Mark Schon, had pre-selected candidate Bill Meyers to hold the position, and the plaintiff was never considered; (2) Mr. Meyers had not applied for the position of local leader but rather was asked if he was interested in the position; (3) the position of "local leader" was never posted other than it being mentioned once at a meeting at which the plaintiff was not present; (4) there was no formal job description for the position in question known as the "local leader" position; (5) Mr. Meyers, the selected candidate, was not familiar with VMI's forms, procedures, or operations, but rather only had sales experience, while the

---

[3] As in its January 26, 2005 order, the court here again notes that it affords the MCHRC's and state courts' factual conclusions preclusive effect because there was judicial review of the administrative agency's factual conclusions. "Issues in Title VII claims are not subject to preclusion by unreviewed state administrative proceedings." <u>Abramson v. Council Bluffs Community School Dist.</u>, 808 F.2d 1307, 1308 (8th Cir. 1987) (citing <u>University of Tennessee v. Elliot</u>, 478 U.S. 788 (1986)).

plaintiff was experienced in both the sales and operations aspects of the branch office; (6) at least one of the plaintiff's supervisors, Mr. Boyer, indicated that one of the reasons that the plaintiff was not selected for the local leader position was that there were men in line who had better qualifications; (7) Mr. Schon, the decision maker, stated that the plaintiff was not qualified for the position of local leader based on duties set forth in an interoffice memo dated January, 1998, however, there is no evidence that these were the qualifications considered in choosing Mr. Meyers for the position; (8) when the plaintiff confronted one supervisor, branch manager Pat Freilinger, about the reason that she had not been considered for the position, his response was that he wanted "our guys to focus on sales"; (9) the defendant expected the plaintiff to train and "mold" Mr. Meyers into his new position as local leader; (10) the plaintiff received very favorable performance reviews during her tenure with the defendant and upon her own initiative had her position enlarged to assume inside sales responsibilities, in recognition that such experience would be necessary to enter upper management; (11) prior to the hiring of Mr. Meyers into the local leader position, the plaintiff was considered by employees of the defendant to be second in command to Mr. Freilinger and it was well known that the plaintiff was involved in sales and could be approached with questions about selling; (12) when Mr. Freilinger was transferred from the Mason City branch due to restructuring, leaving the position of branch manager vacant, and which position was subsequently discontinued when the local leader position was established, the plaintiff made it known that she was interested in his position; (13) there were two different tracks for employment advancement with the defendant for men versus women, as men, depending on their educational background and experience would generally start employment in the warehouse and move up through counter sales, inside sales, and outside sales with the possibility of eventually obtaining a branch manager position, whereas women would start with clerical work and could advance to an "operations manager" or other support position such as marketing or human resources; (14) at the time that the plaintiff made her claim of discrimination, there was at most two

women in outside sales and they were both titled "lighting specialists," which was a narrow and less technical area of sales; and (15) the defendant constructively discharged the plaintiff when it failed to offer assurances concerning her expected opportunities for advancement and further required her to train Mr. Meyers for the position of local leader.[4]

Moreover, none of the cases cited by the defendant establish a difference of opinion between this court and the Eighth Circuit as concerns the standard for punitive damages under Title VII. Rather, the defendant's assertion is that the court has misapplied the punitive damages standard to the facts of this case, in finding that there are genuine issues of material fact concerning whether the defendant intentionally discriminated against the plaintiff with malice or reckless disregard for her federally protected rights not to be discriminated against on the basis of sex. Further, in addition to the factual findings made by the MCHRC and the Iowa state courts to which this court is bound, the court noted in its order dated April 12, 2005 that such findings did not preclude the admission of other evidence at trial, by both the plaintiff and the defendant, on the matter of punitive damages. Accordingly, the court finds that the defendant has failed to demonstrate that this

---

[4] The court notes that the MCHRC found that the plaintiff had been constructively discharged. The district court overturned that decision, finding that there was not substantial evidence that the plaintiff's work conditions were objectively intolerable, and the Iowa Court of Appeals affirmed. The Iowa Supreme Court reversed, finding that "there was substantial evidence that a reasonable person in [the plaintiff's] position would have concluded there was no opportunity for fair treatment and the resulting work environment was so difficult or unpleasant that she had no choice but to resign." In support of this finding, the Iowa Supreme Court noted factors such as (1) that the defendant had placed the plaintiff on the "woman's track" of operations; (2) that when the plaintiff questioned the defendant concerning the choice for local leader she was referred to Mr. Schon, the "very person who made the discriminatory decision"; (3) Mr. Schon then gave the plaintiff "no assurances that she would ever be allowed to pursue management opportunities in the sales area, but rather confirmed that the company saw her future in operations"; (4) Mr. Schon affirmed that he would make the same decision again to promote Mr. Meyers and not the plaintiff; and (5) Mr. Schon then expected the plaintiff to stay in her inferior position and train, or "mold" the man who had been promoted over her.

issue meets the requirements for certification for interlocutory appeal under 28 U.S.C. § 1292.

Upon the foregoing,

IT IS ORDERED that the defendant's May 26, 2005 motion for certificate of appealability/motion to amend the court's orders of January 26, 2005 (docket number 14) and April 12, 2005 (docket number 21), to allow for immediate appeal to the Eighth Circuit Court of Appeals pursuant to 28 U.S.C. § 1292 (docket number 22) is denied.

June 10, 2005.

_____
JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT